UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **CHERYL FOUTTY**, | Case No. 5:10 CV 551 |
| Plaintiff, | Judge Donald C. Nugent |
| v. | REPORT AND RECOMMENDATION |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| Defendant. | Magistrate Judge James R. Knepp II |

## Introduction

Plaintiff Cheryl Foutty appeals the administrative denial of supplemental security income benefits (SSI) under 42 U.S.C. § 1383. The district court has jurisdiction under 42 U.S.C. § 1383(c)(3).

This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). For the reasons stated below, the undersigned recommends the Commissioner's decision be affirmed.

## Background

*Treatment History*

On October 5, 1999, rheumatologist David Becha, M.D., saw Plaintiff on a referral from Dr. Ying-The Wu, her primary care physician. (Tr. 175). Dr. Becha noted fibromyalgic trigger points in her cervical paraspinals, traps, and lumbrosacral paraspinals, but not in her thoracic spine. Dr. Becha recommended further testing, but Plaintiff did not "wish to pursue that". (Tr. 175). Dr. Becha noted Plaintiff was taking Doxepin, but he could not "find anything rheumatologically that can be treated differently". (Tr. 175A).

On January 2, 2002, Dr. Wu completed a work function questionnaire, and attached his treatment notes dating back to December 1998. (Tr. 219, 232). Dr. Wu indicated Plaintiff did not have limited motion in her joints or spine, sensory changes or muscle spasm or atrophy, but did have multiple trigger points dating back more than five years. (Tr. 220-21). Dr. Wu then indicated Plaintiff had no reflex abnormalities, no graded muscle strength, but had an ability to walk on toes and heels, rise from a squat, and to do fine and gross manipulation, although she had a limited range of motion in her sacrolumbar region. (Tr. 222). Dr. Wu further indicated Plaintiff had a normal gait and did not use ambulatory aids. (Tr. 223).

Dr. Wu indicated Plaintiff was diagnosed with fibromyalgia, for which she was taking Doxepin and Mobic, with a "fair" response to treatment. (*Id.*). Dr. Wu further indicated Plaintiff was "o.k." with sitting, carrying and handling objects, but should not stand, walk, bend, or lift for more than three to four hours. (*Id.*).

On February 14, 2002, consultative examiner J. Ventosa, M.D., saw Plaintiff, who reported a five-year history of fibromyalgia. (Tr. 142). Dr. Ventosa noted Plaintiff was taking Neurontin, Doxepin, Mobic, and Darvocet and continued to smoke regularly. (*Id.*). Dr. Ventosa noted Plaintiff walked slowly with a slight right limp, but did not use any ambulatory aids, and had good heal to toe walking. (Tr. 142-43). Dr. Ventosa noted Plaintiff had tender points "all over her upper and lower back, forearms, and thighs" and was very sensitive to touch, although she had no sensory or motor deficits. (Tr. 142A). Dr. Ventosa diagnosed a history of fibromyalgia with fatigue and chronic pain syndrome, and a low endurance secondary to her chronic fatigue. (*Id.*). Dr. Ventosa observed Plaintiff to have normal muscle strength throughout, with no muscle spasm or atrophy. (Tr. 143). Dr. Ventosa further noted Plaintiff to have a normal range of motion in her cervical spine,

2

elbows, wrists, hands/fingers, hips, knees, and ankles, but had a reduced range of motion in her shoulders and dorsolumbar spine. (*Id.*). Dr. Ventosa indicated Plaintiff could stand, walk, and sit, but would have to take frequent breaks, and heavy lifting would bother her back. (Tr. 142A).

On February 27, 2002, state agency physician Thomas Vogel completed a residual functional capacity (RFC) assessment. (Tr. 146). Dr. Vogel found Plaintiff could occasionally lift and carry twenty pounds and frequently lift and carry ten pounds; sit and stand/walk for six hours in an eight hour workday; and push/pull to an unlimited degree. (Tr. 147). Dr. Vogel further found Plaintiff could only occasionally climb ramps or stairs, and never climb ladders, ropes, or scaffolds, but had no other restrictions. (Tr. 148-50).

On January 20, 2003, neurologist Howard Shapiro examined Plaintiff on a referral from Dr. Wu. (Tr. 243). Dr. Shapiro noted Plaintiff complained of aching sensations throughout her body, as well as feelings of lightheadedness. (*Id.*). On examination, Dr. Shapiro noted Plaintiff's reflexes were normal and symmetric, her station and gait were normal, and she was able to toe, heel, and tandem walk, although there were some exaggerated postures during the testing. (Tr. 243-44). Dr. Shapiro further noted Plaintiff's muscle strength and tone were normal, as was her sensory testing. (Tr. 244). Dr. Shapiro also reviewed a brain MRI, and indicated he did not see any evidence of a significant neurological problem. (*Id.*).

On June 5, 2003, orthopaedist Paul Steurer examined Plaintiff and noted she had completed high school and worked as a cashier for all of her working life. (Tr. 205.) He noted she had been diagnosed with fibromyalgia seven years earlier, which she reported becoming progressively worse, resulting in "total body pain" and some generalized weakness and fatigue. (Tr. 205-06). Dr. Steurer also noted Plaintiff continued to smoke and was taking Neurontin, Darvocet, Duricef, Doxepin,

BuSpar, and Lomotil. (Tr. 206).

On examination, Plaintiff was hypersensitive to touch throughout her body, but had no swelling or deformity in any of her joints except for in her basal thumb joints. (*Id.*). Dr. Steurer observed Plaintiff to have normal muscle strength in her shoulders and hands, with no muscle spasms or atrophy. (Tr. 208-09). Dr. Steurer also observed Plaintiff to have a normal range of motion in her cervical spine, elbows, wrists, hands, fingers, hips, knees, and ankles, but a reduced range of motion in her shoulders and dorsolumbar spine. (Tr. 209-11).

Dr. Steurer diagnosed Plaintiff with fibromyalgia with chronic pain syndrome and bilateral arthritis of the basal thumb joints. (Tr. 207). Dr. Steurer indicated she would have "problems doing any kind of physical work requiring anything heavy, repetitive bending, lifting, pushing or pulling, repetitive gripping and grabbing". (*Id.*).

On July 3, 2003, state agency physician Paul Morton completed on RFC assessment. (Tr. 213). Dr. Morton found Plaintiff could occasionally lift and carry twenty pounds and frequently lift and carry ten pounds; could sit and stand/walk for six hours in an eight hour workday; and push/pull to an unlimited degree. (Tr. 214). Dr. Morton further restricted Plaintiff to occasional climbing of ladders, ropes, and scaffolds; occasional stooping; kneeling; crouching; crawling; and frequent climbing of ramps and stairs. (Tr. 215).

On September 5, 2004, state agency physician Gerald Klyop reviewed the medical evidence and confirmed Dr. Morton's findings. (Tr. 218).

On October 27, 2005, Dr. Wu submitted an opinion at Plaintiff's counsel's request. (Tr. 257). Dr. Wu indicated Plaintiff had been under his care since 1998 and had been "totally and permanently disabled because of chronic pancreatitis, fibromyalgia, and depression." (Tr. 257).

4

On December 30, 2005, Plaintiff went to the hospital complaining of headaches. (Tr. 361). Plaintiff's physical examination was normal, although she reported smoking more than a pack of cigarettes a day. (*Id.*). Plaintiff was able to move all her extremities with equal grips. (*Id.*). Plaintiff also underwent an MRI, which was normal. (Tr. 365).

*Administrative Hearings*

On October 13, 2005, Plaintiff appeared with counsel before the ALJ. (Tr. 259). Plaintiff testified she previously worked as a cashier and waitress. (Tr. 264). She testified she was currently on medications leaving her fatigued, and her body felt achy and rubbery, but the medication helped. (Tr. 265-66). Plaintiff said she could sit for about 45 minutes to an hour, but then had to get up because her legs, back, and neck would cramp. (Tr. 267). Plaintiff admitted her doctor told her exercise would help her condition, but did not exercise as much as she should. (Tr. 268). Plaintiff said she did her own shopping and laundry, and while able to drive did not have a license and said her doctor told her not to drive. (Tr. 269-70). Plaintiff also said her doctor told her she should not work for six months because of her fibromyalgia although she should exercise. (Tr. 271). She admitted still smoking cigarettes. (Tr. 279-80).

Medical expert Hershel Goren testified Plaintiff did not have any listing level impairments. (Tr. 275-76). Dr. Goren also noted Dr. Wu had indicated Plaintiff was restricted to less than sedentary work, but this was inconsistent with her medical records, including those Dr. Wu provided, which showed she had normal strength throughout her body and did not use ambulatory aids. (Tr. 277-78). Dr. Goren said there was nothing in the medical records supporting limiting her to walking or bending for only three or four hours a day. (Tr. 278). Dr. Goren indicated Plaintiff might subjectively believe she could not work, but there was no objective evidence supporting a

5

finding that she could not work. (Tr. 280).

Vocational expert (VE) Kevin Yi also testified. (Tr. 282). The ALJ asked a hypothetical question about an individual with Plaintiff's age, experience, and background, who was limited to simple, routine work in a low-stress environment and minimal interaction with coworkers and supervisors or complex instructions, who could lift: ten pounds frequently and twenty pounds occasionally; stand and sit for six hours in an eight hour workday, occasionally climb ladders, ropes, and scaffolds; and occasionally stoop, kneel, crouch, or crawl. (Tr. 283). The VE testified such an individual could perform Plaintiff's past work except her waitress job. (Tr. 283, 285).

At the end of the first hearing, the ALJ instructed Plaintiff's counsel to contact Dr. Wu to verify he had advised Plaintiff not to drive or work for six months. Counsel wrote to the doctor in response received a handwritten note stating: "She has been under my medical care since 1998. She has been total and permanently disabled since 1998 because of chronic pancreatitis, fibromyalgia and depression." (Tr. 257).

In his first decision, the ALJ found Plaintiff not disabled. This denial was appealed to the Appeals Council, which declined further review. Plaintiff filed an appeal to the District Court (Case No. 1:06 CV 113), which, by agreement of the parties, was dismissed and the case was remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) to re-evaluate the severity of Plaintiff's fibromyalgia, in combination with her other impairments. (Tr. 335).

On April 17, 2007, Plaintiff appeared for the second hearing, and stated she had recently gone to the emergency room because of muscle spasms. (Tr. 373, 379). Plaintiff said she was still taking her medications. (Tr. 379-80). Plaintiff confirmed she had not worked since 2002, and she tried to get out once a week to visit her mother and go to the store. (Tr. 381). Plaintiff testified she

6

was still smoking. (Tr. 382). Plaintiff said her back and head caused the most pain, but with her medication her pain was only a "two" on a ten point scale. (Tr. 383). Plaintiff also said her doctor still told her to exercise, but she was not exercising much. (Tr. 384).

Dr. Goren then testified that Plaintiff had fibromyalgia. (Tr. 385-86). Dr. Goren explained he disagreed with Dr. Wu's opinion limiting Plaintiff to less than sedentary work, because such restrictions were inconsistent with the medical literature regarding fibromyalgia, which recommended patients should exercise – trying to build up to jogging – not restrict their activities. (Tr. 388-89). Dr. Goren noted Plaintiff did not use any ambulatory aids, and most of her testing was negative except for pain. (Tr. 389). Dr. Goren concluded Plaintiff's fibromyalgia did not cause any physical limitations; she could stand/walk and sit for six hours in an eight hour workday and would have no postural restrictions. (Tr. 390-91). Dr. Goren explained the limitations in Plaintiff's range of motion in her shoulders were not significant. (Tr. 391).

Vocational expert Bruce Holderead also testified. (Tr. 393). The ALJ asked a hypothetical question about an individual of Plaintiff's age, education, and background who was limited to routine work with minimal interaction with the public, coworkers, and supervisors, and who could not be given detailed instructions but could: make simple decisions; occasionally lift and carry twenty pounds and frequently lift ten pounds; stand/walk and sit for six hours in an eight hour workday; occasionally climb ladders, ropes, and scaffolds; and occasionally stoop, kneel, crouch, and crawl. (Tr. 393-94). The VE said such an individual could perform Plaintiff's past cashier/checker, waitress, and automobile self-service station work. (Tr. 394-95). The VE also identified other work this individual could perform, including sales attendant, order caller, and fast food worker jobs. (Tr. 372, 395-96). When asked about such an individual being limited to

sedentary jobs, the VE said this individual could perform charge account clerk, addresser, and document preparer jobs. (Tr. 372, 397-98).

## Standard of Review

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## Standard for Disability

Eligibility for SSI is predicated on the existence of a disability. 42 U.S.C. § 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. § 416.920 – to determine if a claimant is disabled:

     1.       Was claimant engaged in a substantial gainful activity?

     2.       Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

     3.       Does the severe impairment meet one of the listed impairments?

     4.       What is claimant's residual functional capacity and can claimant perform past relevant work?

     5.       Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. § 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## Discussion

Plaintiff raises three challenges to the ALJ's decision:

1. The ALJ's finding of no severe impairment is unlawful and not supported by substantial evidence.

2. The ALJ's finding that Plaintiff can perform work at the light exertional level is not supported by substantial evidence.

3. The ALJ did not have substantial evidence supporting his decision to reject the treating physician's opinion.

For the reasons discussed below, these contentions lack merit.

*Severe Impairment*

Plaintiff argues the ALJ's finding that her fibromyalgia was not a severe impairment was not supported by substantial evidence. Defendant barely responds to this argument, instead claiming that the ALJ found the fibromyalgia to be a severe impairment. (Doc. 21). A cursory reading of the ALJ's decision, however, reveals that he did find Plaintiff's fibromyalgia to be a non-severe impairment. (Tr. 318-20; 324).

The ALJ found Plaintiff's fibromyalgia did not constitute a severe impairment. Although the ALJ's rationale may not be a model of clarity, he certainly found no severe impairment. In his "Findings of Fact and Conclusions of Law" section, the ALJ found:

> 2. [Plaintiff] has the following medically determinable impairment: fibromyalgia (20 CFR 416.920(c)).
> 3. [Plaintiff] does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore **the claimant does not have a severe impairment or combination of impairments** (20 CFR 416.921).

(Tr. 318) (emphasis added).

Subjective complaints of pain are evaluated under the two-part test articulated by *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 852-53 (6th Cir. 1986). The ALJ must first

determine "whether there is objective medical evidence of an underlying medical condition." *Id*. at 853. If so, the ALJ must then determine "whether objective medical evidence confirms the severity of the alleged pain arising from the condition or whether the objectively established medical condition is of such a severity that it can be reasonably expected to produce the alleged disabling pain." *Id.*; *see also* SSR 96-7p.

But Fibromyalgia is an unusual impairment in that its symptoms are often not supported by objective medical evidence. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007) ("[G]iven the nature of fibromyalgia, where subjective pain complaints play an important role in the diagnosis and treatment of the condition, providing justification for discounting a claimant's statements is particularly important."). A "focus solely upon objective evidence" is "not particularly relevant" when it comes to analyzing claims of fibromyalgia. *Id.* at 245. It is therefore error to rely on a lack of objective evidence to support denying benefits to a fibromyalgia claimant.

The ALJ does not clearly explain why he found Plaintiff's fibromyalgia to not be a severe impairment, but it seems that it was a combination of discounting her subjective symptom testimony and relying primarily on Dr. Goren, the testifying medical expert. (Tr. 320-24). The ALJ did not dispute the diagnosis of fibromyalgia, but credited Dr. Goren's assertion that there is no objective evidence of her symptoms and they therefore cannot provide the basis for a finding of a severe impairment. (Tr. 323). He also credited Dr. Goren's assertion that Plaintiff's fibromyalgia is not a severe impairment because fibromyalgia patients are encouraged to exercise as part of their treatment. (Tr. 323, 389). Even though exercise is often prescribed as part of a treatment regimen for fibromyalgia, that has not prevented the Sixth Circuit from recognizing that fibromyalgia may constitute a severe impairment. *See, e.g. Rogers*, 486 F.3d at 243-46. Furthermore, relying on a lack

11

of objective evidence to support debilitating symptoms does not apply in the fibromyalgia context where, by the disease's nature, there can be no objective evidence.

While the ALJ's reliance on Dr. Goren's opinions might be questionable, he also based his finding of no severe impairment on finding Plaintiff's own account of her impairments not credible. (Tr. 321-22). Plaintiff does not challenge this credibility finding, and the undersigned finds it persuasive, it being based on evidence Plaintiff has not complied with medical advice, gave inconsistent testimony about the extent of her pain and abilities, and unsupported testimony about her need to take naps. (Tr. 321).

Regardless whether the ALJ properly found Plaintiff's fibromyalgia a severe impairment, he also found that, were it a severe impairment, Plaintiff's claim would fail at both steps four and five of the sequential analysis. As discussed below, these findings are supported by substantial evidence, thus mooting any concern the Court may have with the severe impairment finding.

*Light Exertional Work*

Even though he found Plaintiff's fibromyalgia was not a severe impairment, the ALJ alternatively found that Plaintiff's claim would fail at steps four and five of the sequential analysis – that she could perform past relevant work and other work based on her residual functioning capacity (RFC). In connection with this, the ALJ determined if Plaintiff's fibromyalgia were a severe impairment, she would retain the RFC:

> to perform a range of light work. Specifically, she could lift, carry, push and pull 20 pounds occasionally and ten pounds frequently. She could sit for six hours and stand and/or walk for six hours in an eight-hour workday with normal breaks. She could occasionally stoop, kneel, crouch, and crawl. She would be limited to routine work with minimal interaction with the public and coworkers. She would be capable of making simple decisions but would be precluded from detailed work.

(Tr. 323). Plaintiff argues the finding she is able to perform light exertional work is not supported by substantial evidence. (Doc. 19, at 14-15).

A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence. *Id.* § 416.1529. An ALJ must also consider and weigh medical opinions. *Id.* § 416.1527.

The fact of Plaintiff's fibromyalgia alone is not particularly instructive in assessing her RFC, as the appropriate inquiry is into any particular restrictions her physicians may have observed. *See Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) ("A diagnosis of fibromyalgia does not automatically entitle Vance to disability benefits; particularly so here, where there is substantial evidence to support the ALJ's determination that Vance's fibromyalgia was either improving, or, at worst, stable."); *cf. Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("Some people may have a severe case of fibromyalgia as to be totally disabled from working . . . but most do not and the question is whether [claimant] is one of the minority."). Aside from the fibromyalgia diagnosis, there was very little evidence of particular restrictions in this case, and the testing of Drs. Ventosa and Steurer showed full strength and a nearly full range of motion, and Dr. Goren testified Plaintiff's reduced range of motion were not significant. (Tr. 143-45, 209-11, 391). It was reasonable and correct for the ALJ to note the physical testing and examination done by Drs. Ventosa and Steurer. (Tr. 320-21). And because the ALJ's RFC finding largely adopted Dr. Goren's opinion, but with additional postural restrictions to give Plaintiff the benefit of the doubt, substantial evidence supports the ALJ's RFC finding that Plaintiff is capable of light exertional work.

13

*Treating Physician*

In reaching his conclusions, the ALJ rejected the opinion of Dr. Wu, Plaintiff's primary care physician, that she was completely disabled. (Tr. 322). In so doing, he wrote the following:

> I give little weight to Wu's opinions. They are inconsistent with each other and with his treatment notes. There is no mention in Wu's treatment notes or any indication he ever treated Foutty for pancreatitis [one listed reason in a note from Wu opining Plaintiff was totally disabled]. He has treated Foutty since 1998 and his notes reveal her complaints of muscle pain, aches, fatigue, and anxiety. Wu prescribed pain medication, including Darvocet, which Goren said is inconsistent with how fibromyalgia is treated. Wu's progress notes do indicate symptomatology, examination findings, or objective evidence to support his opinions. Additionally, Wu is a family practitioner and not a rheumatologist or neurologist with expertise in dealing with fibromyalgia. The course of treatment Wu pursued has not been consistent with what one would expect if Foutty were truly disabled, as he reported.

(Tr. 322). Plaintiff challenges these reasons as insufficient to discount Wu's testimony, and in at least one instance, as being inaccurate.

Plaintiff argues the ALJ erred in discrediting Dr. Wu's opinion because he identified pancreatitis as part of the reason for her disability. (Doc. 19, at 16-17). Specifically, Plaintiff asserts Dr. Wu noted Plaintiff had pancreatitis when he first saw her in December 1998. But after that one reference to pancreatitis, Dr. Wu did not mention it again anywhere in his ongoing treatment notes through 2005. (Tr. 225-32, 235-40). To the extent Plaintiff's pancreatitis was an impairment impacting her ongoing ability to perform work, it is reasonable to expect it would be something her primary care physician actually noted and treated more than once. A treating physician's opinion must always be viewed in conjunction with the rest of the medical record, because he may become sympathetic with the patient, and "too quickly find disability." *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008). This is certainly a concern when the treating physician asserts total disability based, in part, on a condition he had not treated or even referenced in over seven years.

14

Accordingly, the ALJ reasonably considered Dr. Wu's suspect reliance on Plaintiff's pancreatitis in finding Dr. Wu's opinion unreliable.

In addition, the ALJ reasonably noted the inconsistency between Dr. Wu's 2002 and 2005 opinions. (Tr. 322). In 2002, Dr. Wu noted Plaintiff had no limitations in sitting, and could not walk, bend, or lift for more than three to four hours a day, which would allow at least sedentary work. (Tr. 219). In 2005, in contrast, Dr. Wu said Plaintiff had been unable to since 1998, and did not explain the discrepancy between that conclusion and his 2002 opinion. (Tr. 257). Opinions of a treating physician that are inherently inconsistent are not entitled to controlling weight. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (*en banc*) (ALJ reasonably found "that others of Dr. Templin's many medical assessments of Combs were inconsistent with this assessment, and that Dr. Templin was therefore less than credible"). Thus, the ALJ reasonably noted Dr. Wu's opinion conflicted, and were less trustworthy.

Most importantly, the ALJ noted Dr. Wu's opinions were not well-supported by the record, including by his own notes. (Tr. 322). Under the regulations, an ALJ is to give controlling weight to a treating source opinion concerning the nature and severity of a claimant's impairment if the opinion "is well-supported by medically acceptable clinical and diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. 416.927(d)(2); SSR 96-8p; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Dr. Wu did not extensively document his treatment from 1998 to 2005. (Tr. 225-32, 235-40). The notes he did provide did not support his opinions. During this time, Dr. Wu noted Plaintiff's complaints of pain, but did not indicate he had performed any testing of Plaintiff's ability to do work-like functions, such as sitting, standing, walking, bending, or lifting. (Tr. 225-32, 235-40). However, Dr. Wu did observe Plaintiff

15

had no reflex abnormalities; had no degraded muscle strength; had a normal gait; could walk on toes and heels, rise from squat and do fine and gross manipulation; and used no ambulatory aids. (Tr. 222-23). These latter observations were consistent with two other examining physicians' observations. Drs. Ventosa and Steurer both performed physical examinations of Plaintiff, and personally observed Plaintiff to have full strength and a nearly full range of motion. (Tr. 143-45, 209-11). Moreover, to the extent Dr. Wu believed Plaintiff was "totally and permanently disabled" because of her conditions, he did not memorialize such a concern in his notes; he simply noted Plaintiff's condition, adjusted her medications, and asked her to return periodically for observation. (Tr. 225-32, 235-40). At no point did Dr. Wu suggest the type of treatment planning expected for a patient that a doctor believed was so restricted that she was unable to perform any type of work.

Finally, the ALJ correctly noted that Dr. Wu was a family practitioner, rather than a specialist normally recognized as dealing with the effects of fibromyalgia. (Tr. 322). The regulations provide that "the opinion of a specialist about medical areas related to his or her area of specialty" are given more weight, 20 C.F.R. 416.927(d)(ii)(5), and it has been recognized that family practitioners are not specialists in assessing the effects of fibromyalgia. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). In the absence of any personal testing or observation he performed, Dr. Wu's opinions as to the restrictions caused by Plaintiff's fibromyalgia would need to be consistent with the remaining evidence in the record to be granted controlling weight. As Dr. Wu's opinions were not so consistent, the ALJ reasonably declined to accord them controlling weight. The ALJ gave good reasons for not assigning Dr. Wu's opinions controlling weight.

### Conclusion and Recommendation

Following review of the arguments presented, the record, and applicable law, this Court finds

16

the Commissioner's decision denying SSI benefits supported by substantial evidence. The undersigned therefore recommends the Commissioner's decision be affirmed.

                                                 s/James R. Knepp II
                                              United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).